Thank you for joining us. Thank you, Your Honor. As if you maybe had a choice, but we're glad you're here. Thank you, Your Honor. May it please the Court. I'm Chris Landau, and I'm here today for Plaintiff Appellant Attari. I'd like to reserve three minutes for rebuttal. Okay, thank you. This case and the Randy Melville case, which is up next, both involve Redbubble, which was basically operating as the napster of trademark law. If you went on their website and typed in virtually any brand name into the search box, you could call up a whole knockoff emporium. Redbubble very openly took a hands-off approach, saying it's not our job to police our own site until we get a takedown notice. Counsel, can I ask you about that? Because there was allegations in the complaint, and reflecting sort of your position here, that this is the worst of the worst. Redbubble, they do their business this way, they don't police this stuff, and yet every time that the takedown notices were sent, they seemed to be responsive and even over-responsive. So how do we sort through that? Because it seems like they were pretty reasonable once stuff was called to their attention. I guess that goes to your position that they had a greater duty than just waiting for a takedown notice. That's correct, Your Honor. And again, it's not just our impression that they were the worst of the worst. We actually had expert testimony below by somebody who does this for a living, and she said that this was the worst of the worst in her experience, and her whole job was to send takedown notices to companies. Essentially, there's evidence in the record where they literally say our policy is not to do anything until we get a takedown notice. So basically they're saying, we're putting our head in the sand. It's your obligation to come to us, even though we're operating a print-on-demand site that obviously can create a very serious risk of trademark infringement. But is there any court that has adopted sort of a standard that would hold them liable? Because if you look at the Tiffany case in the Second Circuit, they didn't go quite as far as I think you're trying to advocate here, that they have sort of an independent duty to, Redbubble does, to police. You're right. And Omega, which clarified Tiffany. Omega came out in 2021 and made clear that there is a duty not to facilitate or a duty not to make yourself blind to trademark infringement that you are facilitating. When you go around your business, you don't generally have an affirmative obligation to look out for trademark obligations. But when it's staring you in the face, you can't put your head in the sand and say, you know something, not my problem, and then say, well, gee, guess what? I didn't know about specific infringers or specific issues. Well, it seems like you're asking, it seems like we probably need to publish on willful blindness. Other circuits have given more guidance on this. But my concern always is when you ask us to go where no one else has gone, and in terms of I think the generalized knowledge test that you want us to publish on, wouldn't that put us at odds with other circuits? Absolutely not, Your Honor. And let me be very clear. We're not asking you to adopt a generalized knowledge test. We're asking you to follow exactly what the Second Circuit said on this issue in the Omega case. We are 100 percent on board with the legal standard applied in Omega and also with the Tenth Circuit in 1-800 Contacts and the Sixth Circuit in Coach. It's Redbubble that is asking you to go back to their very idiosyncratic reading of Tiffany, which was clarified by the Second Circuit in Omega. Again, I think the key point here, Your Honor, this contributory liability issue was decided by the court below on summary judgment. This is a summary judgment appeal on contributory liability. As you pointed out, Judge Nelson, they can argue that what we did is reasonable. God bless them. They have a right to do that. But we certainly can argue that what they did was willful blindness because there was ample evidence in front of them on the record. And in this case, I know it's different in the two cases. In this case, the direct trademark infringement is what went to the jury. That's correct. That's correct. And so not only did the contributory – under the contributory negligence theory, is that where this would end up? Your Honor, I think you could – there's different ways that this could all shake out, but I think a new trial that goes to both contributory and direct liability because those are not mutually exclusive. They're overlapping. And obviously you can only recover under one, but the truth is what they've tried to do is a little bit like a game of whack-a-mole. When somebody kind of says, well, we're focusing on direct liability, I said, no, we're really more of the contributory. When somebody tries to focus on the contributory, they're like, no, no, no. It doesn't meet the standard for a contributory. They're trying to have it both ways. Well, in the second – I mean, I'm trying to figure out how these two cases interact because, I mean, it doesn't seem like they're necessarily inconsistent, but there seems to be some tension in what the district court judges did in the two cases. Well, in this case, the district court said that no reasonable jury could find contributory liability. In the other case, the jury – the contributory liability claim went to the jury and they found contributory liability and willful contributory liability. And that suggests that the district court may have erred on contributory negligence here because it suggests if it goes to the jury – I mean, whether you have the legal standard met, a jury apparently found contributory negligence. Correct. Similar – I think it's similar. Yeah, very much. The facts are really almost identical in two cases. I mean, there are small variations, but basically the same record and the same firms tried both cases. Why don't you get a new trial on the direct? We should get a new trial on direct because there was a jury instruction that departed from this Court's model jury instructions and added a sentence saying if you find that Redbubble's role was as an intermediary or as a facilitator of sales made by others, you may not find that Redbubble used the plaintiff's mark. So basically they said if you find that the artists were the ones who are the direct infringers and Redbubble is just contributory, you can't find direct liability. So basically they got up at trial and said, you know, the artists were really the culpable ones here. And they used contributory liability as an absolute defense to direct liability. But that's a separate issue. So if we just agreed with you on the first issue, that would go back presumably for a new trial on the direct issue. And then contributory would depend on whether we agree with you on the second argument. I'm sorry. So contributory would depend on whether we meet the legal standard. I had it reversed. I think you might have. Yeah. I think basically we lost on summary judgment a contributory. That never went to the jury. And our basic point on contributory is, hey, there was enough evidence. They're entitled to dispute the evidence. And as you said, they can say, you know, hey, we got a takedown notice. We acted reasonably. Our point is you shouldn't have to wait. You were putting your head in the sand before you got a takedown notice. And even after the takedown notice, whether or not, okay, you took stuff down, but then you allowed it to come right back. This was the problem. In both cases, we had sent takedown notices. So we had two different judges. And I guess what I'm understanding your argument to be on some level, and I've made this argument, like sometimes when on a panel we're split and say, like, I'm in dissent, and we're deciding whether any reasonable person could have come to a conclusion, I'm saying, hello, I'm reasonable, you know. And so and then the majority still says no reasonable person could have. And you're basically saying, okay, we have two different judges that seem to view this differently. So how can you really say? And then you have a jury that came back differently. And so how can we really be sure? It is certainly anomalous, it would seem to me, to say that, you know, again, we can argue about the legal standard and we will, but that no reasonable – the argument in this case that they're making that it should never even have gone to a jury is undermined by the fact that it did go to a jury in another case, and they actually found willful counterfeiting in the Brandy Melville case. I understand that, you know, that's not necessarily dispositive, but it certainly would be quite anomalous for this court to say, okay, you know, that jury verdict is okay. Well, I mean, summary judgment is a dispositive motion, and it takes something outside of the jury. Correct. And so you're basically saying that no jury would do this. Right. So I get your argument there. And again, I think the evidence here is just overwhelming. I mean, we highlighted at pages 18 to 23 of our brief, and they themselves – we don't have to look for inferences or circumstantial evidence. They say in their annual report that 76% of our merchandise – they're kind of boasting about this – is from authentic sellers. But doesn't that go to the question of what the correct legal standard is? Because if we say that generalized is not enough, then that evidence doesn't really make the case for you. If we were to say that it has to be more specialized knowledge, that seems to play into their position. Well, you're right. Again, I think we're talking about willful blindness. Their position is kind of strange. So you have to be willfully blind to specific infringers. I mean, willful blindness is kind of putting your head in the sand. To say you have to be willfully blind to X or Y is kind of a contradiction in terms. It kind of doesn't make any sense. So your argument would be that there can be willful blindness to the general infringement that's going on on their side? Well, yes. Well, at some point, when the evidence is staring you in the face, again, let's not lose sight of what's going on here. They're in the business of printing on demand. So they're getting all stuff uploaded, including just logos. I mean, if you look in the record in this case and in our briefs, you see tons of logos that are being uploaded. They're just willy-nilly – they take it from there. They're printing that stuff. They're selling that stuff. I mean, if you go to Nordstrom and you're seeing Chanel on sweaters and stuff like that, for them to say, well, gee, we had no idea, it's not – I mean, certainly one can argue that this was willful blindness when your whole business model is print on demand. In the Chanel example, then, you have a willful blindness to a specific instance of infringement. So I guess it would be helpful for me to understand just – how would you define willful blindness, just to put it short? I think willful blindness is knowledge or reason to know that you are facilitating infringement or counterfeiting of the plaintiff's mark and failure to take reasonable steps. Now, obviously, the degree of knowledge can vary depending on the medium. What is willful blindness or what you should have known in the context of something like eBay may be different than what it is in the context of Redbubble. I think – It concerns me that if you could be found willfully blind for general knowledge of infringing activities on your platform, and doesn't that, in effect, almost create a strict liability? No, you're – we 100 percent do not take that position. We are 100 percent with Second Circuit and Omega that reject it, that said exactly what you said, that generalized knowledge is not enough. Generalize that there's infringement on your platform. The evidence in this case goes far beyond just generalized knowledge. I mean, this is a case that your platform is basically being used as a digital canal street. This is very different than eBay saying, well, you know when you have a site as big as eBay that somebody's going to be selling counterfeits, and therefore you have generalized knowledge. Well, I think that's when the eBay court says, no, you've got to kind of know who's doing it. In Omega, they distinguish that that's not invariably true because when you're willfully blind, that means you are ignoring, you are blinding yourself to the bright lights that are there. And in this case, there are – How did that play out? Maybe I'm getting the two cases confused, but there was a letter sent on 300 infringements, all of which were taken down. This might be the Melville case. And then 200 of them, the listers came back and said, hey, we're not violating. It turned out they apparently weren't, or at least Redbubble put them back up. Yeah, and that is the other case. But all the infringement came back up. I mean, we have evidence here that they didn't suspend people, even the worst infringement. Your point is they were fine to say, hey, take it down, wink, wink. Go ahead and put it back up tomorrow. Again, if you look at the bullet points at pages 18 to 23, they have all of these things. There's people that were suspended 34 times, the most hardcore people. They didn't take serious action to solve it. So, again, if you call the exterminators to your house and they say, okay, we've taken care of your bugs, but they don't actually stop new bugs from coming in, they don't get the eggs, they can't say, well, guess what? We've done a great job. We've completed your problem, but you haven't really addressed the underlying problem. And three months later, all the bugs are exactly back. You're like, well, what was the point of that? Again, I think they kept a lot of the features here that made this into a digital canal street. They kept the search box, which allowed anybody to basically, you typed in Brandy Melville, you would get hundreds of Brandy Melville products. It was like a Brandy Melville store. The same thing for any brand. What were they supposed to do? Because some of those would have been violating and some would not. I mean, do they have to clear everyone before they go up? Well, again, I think most other sites, again, this goes to what is a reasonable response, which, again, I think is a classic jury question, and that is one of their arguments. Again, I think what we have here is well beyond the line that at least allows it to go to a jury. Again, this is a summary judgment appeal on contributory liability. Just again, to finish the point on direct liability, I think the key point I'd like to make is that there was an instructional error that gave them a legal defense to which they were not entitled, which is if you are only a contributory facilitator, you can't be directly liable. So that allowed them to say we were only a contributory person. It's kind of ironic. Their defense at trial was really to say that they were contributory and that the real infringers were the artists who were uploading. So they actually got away with both. This is what I'm confused about because you, or I say you, I don't know if you were trial counsel or not, but Atari made a strategic decision apparently not to take the contributory negligence to trial. Now, I assume that's because their position was, well, you've basically gutted our position. 100%. The judge's summary judgment order on contributory infringement basically specifically rejected willful blindness, which was our theory. And the judge said there was one piece of evidence that might have allowed that. The stipulation, they haven't contested this, that the stipulation allowed us to preserve the willful blindness theory, which is what we're doing. It sort of seems that your argument's the domino. If the first one's wrong, then it all goes down. Well, I think certainly the contributory standard here was that the court ignored evidence that would allow a reasonable jury to determine that there was willful blindness and that they were not reasonable in response to that knowledge and that the court gave an erroneous instruction on direct infringement. Again, these two cases are the mirror images. In this case, the court granted summary judgment on contributory and direct went to the jury. In the other case, it was the opposite, summary judgment on direct contributory. Well, and it's kind of like if you make a mistake, then it's really confusing what evidence comes in and how you can argue something. So do either of my colleagues, okay, we've taken you over, but I'll give you two minutes for rebuttal. Thank you, Your Honor. Okay, thank you. Good morning. Good morning. Joe Gratz for Morrison & Forrester for Red Bubble. I want to begin with the question of what is the standard for willful blindness? I think that is a question that is before the panel. The standard for willful blindness was given to us by the Supreme Court in Global Tech. It is that a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. And importantly, the Supreme Court in Global Tech says that the willful blindness standard, the standard they were rejecting in Global Tech was a standard of deliberate indifference. Willful blindness is above deliberate indifference. It is above recklessness. It is above negligence. It is above all of these things because it requires active avoidance of knowledge, where in the ordinary course, if you hadn't gone out of the way to avoid it, you would have gained the knowledge. And that's not what was presented here on summary judgment. This case does seem different than the second. I mean, setting aside the legal standard, it does seem like Red Bubble is sort of taking a position that, come and get us if you want. Good luck. Keep sending in your letters. And that's problematic. I mean, that comes. I wonder if you could. What's your position that, okay, say we adopt the Second Circuit standard, but why wouldn't you still be liable or potentially liable enough to go to a jury under the theory that it's just so rampant that you don't have enough procedural safeguards in place? So, Your Honor, not having enough procedural safeguards in place in general, to be clear, we think we do, and I'm happy to talk to the panel about this. But not having enough procedural safeguards in general, not living up to a standard of care, that's negligence. Negligence. And perhaps deliberate indifference. You could imagine that raising the level of deliberate indifference if we decided really hard not to have good enough standards. And the Supreme Court in Global Tech said that doesn't get you to willful blindness. And we know from the Love Darts case in this court that the Supreme Court's Global Tech is the standard. So your position basically is under the Supreme Court's definition of willful blindness, no matter what else we do, unless there's a takedown notice that said we're not, I mean, is there any other way under your position that you could be found liable? Yes. There are, if there was a showing of specific knowledge or deliberate avoidance of specific, going out of your way to avoid that specific, you could still find contributory liability. For example, if there wasn't a takedown notice from a trademark holder, but there was some other kind of notice. If there was evidence that there were internal communications between people saying, hey, I noticed this listing over here. We should do something about this because I know this is obvious infringement. And they say, well, yeah, but we haven't received a takedown notice. And even though we subjectively think it's almost certainly infringement, we're going to leave it up. I want to note that in the trademark area, and in particular in the trademark area, when it comes to marketplaces where there are 100,000 listings a day, that's not something that it's easy for a marketplace to do, and it's not a conclusion that it's easy for a marketplace to reach. Your Honor's question regarding the. So it's almost like you're saying if someone could show you had actual knowledge, regardless of whether there were any requests to take anything down, the fact that they did nothing would certainly be evidence of willful indifference. So if we had actual knowledge, we don't even have to get to willful blindness. I think that's right. That's right. Well, but what about in your view, is this case on all fours with the Second Circuit's opinion in Tiffany? If not, are there any measures that eBay took in that case that exceed what RedBubble did here to root out infringement? I think the standard in Tiffany is the right one, although I want to note that the Tiffany opinion in the Second Circuit predated the Supreme Court's opinion in Global Tech, which further tightened the standard for willful blindness. I do think that what the Second Circuit said in Tiffany, that just knowing that you're running a platform where people are selling counterfeit goods doesn't do it, and if you take sort of when you're made aware of a problem, if you take earnest efforts to address that problem, you can't be held contributory liable. I think that's right, but I think that goes to the second part of the contributory liability question. That is, in the second part, in Inwood, they said, well, you're contributory liable if you continue to deal with someone who you know or have reason to know is infringing. Those efforts in Tiffany addressed particular people and particular sort of situations that they had been given notice were problematic. They had a program where rights holders could come to them and say, these listings aren't okay, and RedBubble has a version of the same thing. Just as with Tiffany, when a rights holder comes to RedBubble and says, look, here's the problem, let's work together to solve it, RedBubble cooperates. When a rights holder does, as both of the appellants in both of today's cases did, represented by the same counsel, and says, I'm going to send one letter, and then I'm just going to lie in wait, I know the facts, but I am deciding not to tell you, RedBubble, because I don't want the infringement to stop. I want to give rise to a claim that I can go and try and get windfall statutory damages on. That's not what the system should encourage. And I think the standard, the correct standard doesn't encourage that, right? The correct standard says that the rights holder needs to come forward and identify the problem so it can get taken care of. And as your Honor said, RedBubble takes care of the problem when it is brought to RedBubble's attention. But then essentially, I guess your argument is that, in fact, you have no duty to act until the rights holder steps up, because you could just avoid hiring any staff that would scan the site to take a basic look at whether there's infringement. And under, I think, your argument, you couldn't have liability. So in a case where there was generalized knowledge, as in Tiffany, that there was, that there is infringement somewhere, and we don't know which ones, we don't know enough to separate the sheep from the goats. That's right, because taking a blunderbuss approach and just taking down everything that says Atari on it, is not the right approach as the facts of this specific case show. They put in their complaint, thousands of items, everything tagged Atari. When you search for Atari, they put in, as an exhibit, everything that comes up. And we took it all down. And sheepishly, they come back and say, oh, well, we didn't mean it. And indeed, at trial, several of the artists of the material that was taken down testified about their art, which was, I think, everyone conceded non-infringing. So I take Your Honor's point, Judge Thomas, that we shouldn't just sort of allow someone to stick their head in the sand. But I think there's a difference between sticking your head in the sand, where there's something you could do if your head wasn't above the sand. And let me take you, though, to in the second case, but you're both going to come back up and tell us who you are, and I'm going to act surprised to see you. It's you again. But there was a jury. How many people were on the jury in that? I don't remember, Your Honor. Okay. Like could be anywhere from 6 to 12 or whatever, somewhere in that area. But Mr. Landau raised the point that, and I did a lot of trials in my young days, albeit more criminal than civil. But if a judge sanitizes things so much, you know, say like you have a summary judgment motion that says, okay, you can't talk about this, and then you can only talk about this, sometimes it gets very confusing that the trial is not the same as it would be. And it seems like that might have happened here if we say that since whatever that reasonable jury was there, they seemed to think there was a problem. But then yet in this case, the judge said, well, no reasonable juror could think that. But then we know when it did go to a jury, you know, that's kind of the elephant in the room. I don't think because two judges make a different call, it's absolutely wrong. I mean, sometimes that. But it's a little troubling. I think it is possible, Your Honor, to draw a line between the factual scenario with respect to the contributory infringement claim in the Brandy Melville case and the contributory infringement claim in the Atari case. And just focusing for a second on why we think the Atari case is properly a summary judgment case, there was one notice in 2011 that identified one seller and one item. And it said, this person isn't licensed. And it said nothing else. And that person's stuff that was identified was taken down. And then there was six-plus years of silence. As opposed to in the Brandy Melville case with respect to the heart mark, there was, I think it's fair to say, a variety of back and forth that I think could go to the jury in, I think, a way that the one letter about one specific thing seven years ago I think properly sort of is an easier case. And then I would be remiss if I didn't mention the L.A. Lightning mark in the second, the second Brandy Melville case where there wasn't even a registration until around the time of suit. And there was no pre-suit notice of any kind, which we think is an even easier case, although we... You're basically arguing that the summary judgment motion looked different than otherwise, what went to the jury there. And so that's how you affirm the summary judgment motion. But if we decided hypothetically, and I'm not saying that we're going to. We haven't conferenced about it. So I don't, you know, but if hypothetically we had a problem with summary judgment being granted here, how would that have infected the rest of the trial? Well, we don't think that would that... We don't think the presence or absence of the contributory infringement claim affected... Focusing here, just to make sure, because we're talking about what cases on the Atari case, affected the trial at all because the question... I mean, the question put to the jury was crisply the right one and would be identical, which is what was Redbubble's role? Was Redbubble a direct infringer who can be held strictly liable? Right? That is a question. It is a self-contained question. It is not a question that depends on... But the fact that you asked it that way, I mean, doesn't that play into Atari's position that the jury instruction was a little misleading because it said you could only be either a direct infringer or a contributory infringer? But why is it one or the other? Why couldn't it be both depending on the circumstances? So a given actor could be directly liable for one infringement and contributory liable for a different infringement. I don't think you could be both with respect to one infringement. I don't think you could be both with respect to one infringement. A contributory infringer is helping, and the question is... As to one particular infringement, but you could have... I mean, if you're dealing with 300 different instances, you could... I mean, theoretically, you could make a case. I don't know if it bears out here that you were a direct infringer as to... I mean, say Red Bubble posted some of its own listings. Then they could be directly liable for those, but they could be contributory liable for some of the others. There is a hypothetical case like that, and that is not the case that either side... Setting aside what the facts actually are, that's not what either side told the jury. That's not what Atari told the jury. What Atari told the jury in its opening is the question is who is the seller. That's in the record at supplemental excerpts of record 346. So it was appropriate for the jury instruction to be tailored to the evidence that the jury was hearing about the question that Atari decided to try as the plaintiff, which was who is the seller. With respect to the question of can there only be one, Atari's proposed instruction also used the locution the seller, not a seller or one seller or something like that. And so while I think there is a hypothetical different case... Their position at trial was that Red Bubble was the seller. Their position at trial was that Red Bubble was the seller. And the jury disagreed. Turning, if I can, just briefly to address the jury instructions further, I do want to note that these instructions ended up the way they were and the failure or lack of a more detailed seller instruction was the result of Atari not proposing a more detailed seller instruction. One could imagine other correct ways to instruct the jury, but this was one of the correct ways. You raised a waiver question, right, on the jury instruction. Correct. Can you expound upon that a little bit? I guess it goes sort of to the point of the question I asked before, that Atari's position was, or Atari, that's only on Atari's proposed instruction. That's not on their, the waiver is only as to Atari's proposed instruction. The waiver is not as to the formulation. That's correct. So if the question, Your Honor, is did they object to the formulation, the answer is yes. But the formulation is reviewed for abuse of discretion. And we think it is far from abuse of discretion to correctly instruct the jury in a way that they say it should have been more detailed or included more sort of expounded further on the legal standard. I don't think we have additional questions, but if you want to take 30 seconds to wrap up, I'll give you a little extra time. Thank you, Your Honor. Just briefly, with respect to contributory infringement, when you apply the standard from Global Tech, you get to where the same place the district court did, which is that there isn't a material question of fact. And with respect to the objections to the jury's verdict, under the relevant standard review, though there's a hypothetical case where something different could have happened, it is not out of the zone of abuse of discretion with respect to the formulation of those instructions. Thank you. Thank you. Your Honor, just very briefly, I think I can start by giving you some comfort that we are asking you. That's a relief. We are asking you to apply the exact same standard that every court of appeals has applied in contributory infringement cases. The Second Circuit in Omega, the Tenth Circuit in 1-800-CONTEXT, the Sixth Circuit in Coach. The problem is, I appreciate that concession, and I appreciate that it helps clarify it, but doesn't all those other cases found against the claim of infringement, or 1-800-CONTEXT? No, I think they all, at least Omega, said that there was a contributory liability, a contributory infringement claim on the — for the shop owner. I mean, that — But that's because of the specific knowledge that he has. But, again, I think the point is, in each of those cases the argument was made eBay v. Tiffany, which preceded all those cases, required willful blindness to a specific seller. Each one of those cases, including the Second Circuit, which was the author of Tiffany, Tiffany is a Second Circuit case, the Second Circuit clarified that Tiffany doesn't mean what opposing counsel is insisting that it means. Opposing counsel got up, and the first words out of his mouth were, global tech is the answer for the standard. Global tech is a patent case. The patent statute actually has a completely different statutory textual standard for contributory infringement. It says actively induces. So no court of appeals has applied the global tech willful blindness, what global tech defines as willful blindness, in a trademark contributory infringement context. And all of the cases that have looked at this issue have just looked at traditional common law principles to say this is the background norms that informed Congress when it passed the Lanham Act. So, again, we are asking just for the traditional standards. I think they said, well, there was no action to avoid knowledge. There was. They have a policy, which is in the record. You can look at this. We don't go looking. So they're basically disclaiming any attempt to do that, even with everything that's in front of them. Why doesn't that just go to negligence or perhaps even reckless, you know, something above negligence? Why does that go to willful blindness? Because they're getting hundreds of thousands of takedown notices. And, again, one thing, Your Honor, that I could say is very important, I think, is that this very, even after this case was filed, any issue of notice, in a sense, becomes hypothetical because we filed this case. They continue to have counterfeits on Atari. So how can they be saying there wasn't even enough to go to a reasonable jury when after we filed this federal court lawsuit, they still didn't take down the counterfeits? So even at that point. Under your theory, though, how do we distinguish? I mean, when is it so much that it would go to the jury? Because I think everybody agrees. I was assuming you would agree that just because, I mean, if they had a thousand listings and two of them turned out to be infringement, that's not enough to say they were willfully blind. Right. So where does the line go to where you say this is willful blindness even if you don't know about the specifics? It becomes a, look, in any case, Your Honor, it is often difficult to draw the line. The legal standard, again, has been, you know, knowledge is a high standard. Knowledge is not negligence. Reason to know says we often don't get actual evidence of knowledge. So what are the indicia of reason to know? That's going to depend, I think, on the facts and circumstances of each case. That's why it's very difficult to say. Your theory seems to be that all of those cases should go to the jury. Well, I think, no, Your Honor. I mean, I think there is some kind of a threshold. Where is it? How would we write and craft a rule and an opinion that made that distinction? I think you could follow exactly what the Second Circuit said. They have set forth a legal standard. And we would just say the facts here. It's almost like we almost, I feel like for you to win, we almost need an exception. Because I don't think any of the other cases have dealt with this. Where it was just so overwhelming. They all dealt with, did you have specific knowledge? I think. I have to go back and double check that. But you seem to be making a different argument. Which is, it doesn't just require, yes, specific knowledge is enough. But there is this exception where it's just so, you know, 76% of these are problematic. And that needs to be written into the law in some way. Yeah. So, in other words, at that point, you can't basically say, well, guess what? We know that 24% of our sites, 76% are authentic. That means 24%. We know that 24% of what's sold on our site is counterfeit. But guess what? We're going to put our heads down. We have no policy to do anything unless there's a takedown notice. You are, at that point, willfully, we would say blind to the infringement that is taking place on your site. Or at least the jury could determine that. I guess the thing I'm still struggling with, and I know I'm taking you way over time is, but then what? You take your head under the sand and do what? That is a great, and Omega said that. Then the critical question becomes, did you do what is reasonable? The knowledge is, the whole thing doesn't end on knowledge. There's two components to contributory liability. A, that you had the requisite culpable knowledge, and B, that you failed to take reasonable steps in response to that knowledge. And I think on both of those issues, particularly on the reasonableness, that is a classic jury question. I think when you look here at what the district court did, the district court said their steps after getting an infringement notice were reasonable as a matter of law. That went too far, in our view, under the summary judgment standard because certainly we should be able to argue that no. In fact, they took down some stuff, but it was popped right back up. They didn't suspend the people. Again, if you look at the bullet points we have at pages 18 to 21 of our brief, they go through all of the record evidence that we have on this case. So we think in this case we are so far over that line, again, including the evidence that you take this stuff down. So under any circumstances. Are your questions answered? Okay. Thank you, Your Honor. I think both of you are sophisticated enough that since you're going to be right back up at the podium, that you'll figure out a way to say in the next case what you felt like you didn't say in the first case. Because I can see notes writing down quickly about how it's going to somehow. There's a little bit of a flow here. But anyway, thank you. All right. Then I'm going to call the next case, and I'm going to act surprised to see both of you back.
judges: CALLAHAN, NELSON, THOMAS